421 S.E.2d 900 (1992)
Michelle ANDERSON
v.
COMMONWEALTH of Virginia.
Record No. 0116-91-3.
Court of Appeals of Virginia.
October 6, 1992.
Rehearing En Banc Granted November 18, 1992.
Mark T. Williams, Danville (Williams, Stilwell, Morrison and Grimes, on brief), for appellant.
*901 Janet F. Rosser, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Present: BARROW, BENTON and DUFF,[*] JJ.
BENTON, Judge.
Michelle Anderson, a juvenile, was transferred from the juvenile and domestic relations district court to the circuit court, where she was tried and convicted for malicious wounding. The Commonwealth was permitted to choose a psychologist to test Anderson's mental capacity to aid in the decision whether to transfer her to circuit court for trial. Anderson contends that the circuit court judge erred in denying her motion for independent psychological assistance. We conclude that the circuit court judge erred.

I.
Anderson was sixteen years old when she cut Roxanne Tucker's throat with a knife during an argument. The Commonwealth filed a motion in juvenile court to transfer Anderson to circuit court for trial as an adult. See Code § 16.1-269(A). A transfer to circuit court of a child who is fifteen years of age or older and who is charged with an offense for which an adult could be punished by confinement in the penitentiary is subject to a number of conditions, including that "[t]he child is not mentally retarded or criminally insane." Code § 16.1-269(A)(3)(c). The Commonwealth filed a motion specifically requesting the juvenile judge to appoint Dr. Arthur Centor, a private clinical psychologist, to evaluate whether Anderson was mentally retarded or criminally insane. The juvenile judge granted the motion and ordered Anderson to undergo a psychological evaluation by Dr. Centor to determine her "competency to stand trial," "degree, if any, mental retardation," and "sanity at the time of the offense." Dr. Centor reported that Anderson was competent to stand trial and was functioning just above the mental retardation level of intelligence. At the transfer hearing, the juvenile judge found, however, that the requirements for transfer under Code § 16.1-269 were not satisfied.
The Commonwealth appealed the order denying the transfer motion to the circuit court. Anderson filed a motion in the circuit court for funds to obtain independent psychiatric and psychological assistance. Anderson's motion alleged that she had been found to be emotionally retarded in three earlier tests performed by other psychological evaluators, that the Commonwealth had been allowed to choose its independent expert, and that she was indigent. The circuit judge denied Anderson's motion for psychological assistance. Following an evidentiary hearing at which the Commonwealth called Dr. Centor as its witness, the circuit judge overruled the juvenile court and ordered Anderson to be transferred to the circuit court's jurisdiction and tried as an adult. Anderson was tried and convicted in the circuit court of malicious wounding and sentenced to sixteen years in the penitentiary, with four years suspended on the condition she pay restitution to the victim.

II.
Anderson argues that the trial judge's denial of her motion for a psychological evaluation was a denial of due process and constituted an abuse of discretion. Although Anderson asserts that Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), controls the disposition of this case, Anderson concedes on brief that she has no constitutional right to choose psychological assistance of her personal liking or to receive funds to hire her own psychologist. Rather, the nub of Anderson's contention is that since the Commonwealth was granted a psychologist of its own choosing, she was entitled to a psychologist of her own. We believe that the issue before us is whether the trial judge abused his discretion in refusing Anderson's motion.
*902 By statute, when any judicial procedures involving "the provisions of [the juvenile] law are executed and enforced," the parties involved "are assured a fair hearing and their constitutional and other rights are recognized and enforced." Code § 16.1-227(2). Although juvenile court hearings need not conform with all requirements of adult criminal proceedings, juvenile proceedings "must measure up to the essentials of due process and fair treatment." Kent v. United States, 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84 (1966). These protections are not to be lightly regarded in the conduct of a transfer hearing. A juvenile's transfer from the jurisdiction of the juvenile court to a circuit court to be tried as an adult is "critically important." Kent, 383 U.S. at 556, 86 S.Ct. at 1055.
By deciding the waiver [of juvenile jurisdiction] issue, the juvenile court determines whether the accused, if found guilty, will receive nonpunitive rehabilitation as a juvenile from the state's social service agencies or will be sentenced as an adult. The state argues that this is not a critical stage in the guilt determining process. But it seems to us nothing can be more critical to the accused than determining whether there will be a guilt determining process in an adult-type criminal trial. The waiver proceeding can result in dire consequences indeed for the guilty accused.
Kemplen v. Maryland, 428 F.2d 169, 173-74 (4th Cir.1970) (emphasis in original) (footnotes omitted). "[T]he certification of a juvenile offender to an adult court has been accurately characterized as `the worst punishment the juvenile system is empowered to inflict.'" Ramona R. v. Superior Court, 37 Cal.3d 802, 210 Cal.Rptr. 204, 210, 693 P.2d 789, 795 (1985) (citation omitted).
Recognizing the significance of the transfer proceeding, the Supreme Court has held that when the prosecution moves for the transfer of a juvenile from the juvenile court to an appropriate circuit court, "the procedural regularity sufficient... to satisfy the basic requirements of due process and fairness" is required. Kent, 383 U.S. at 553, 86 S.Ct. at 1053. The Court further explained:
[T]here is no place in our system of law for reaching a result of such tremendous consequences without a ceremonywithout hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner.
Id. at 554, 86 S.Ct. at 1053.
The record indicates that the Commonwealth moved the court to appoint Dr. Arthur Centor, a private clinical psychologist, to evaluate Anderson. The juvenile judge approved the Commonwealth's selection. Although the order appointing Dr. Centor did state, in part, that he should "evaluate the defendant's sanity at the time of the offense, and, where appropriate... assist in the development of an insanity defense," the defense's perception of Dr. Centor's neutrality was clearly influenced by the fact that the Commonwealth, movant for Anderson's transfer to circuit court, selected him. Anderson's ability to challenge the Commonwealth's motion to transfer her to the circuit court's jurisdiction due to diminished mental capacity depended solely on the possibility of eliciting favorable testimony from the expert selected by her adversary. Indeed, her mental capacity was sharply contested. Anderson's motion for funds to hire an expert to assist in her defense alleged that on three prior occasions I.Q. testing determined that Anderson was mentally retarded. The Commonwealth's witness could reasonably be expected to challenge those results. Indeed, Dr. Centor contested those earlier findings and further testified that his testing technique was superior to the techniques of earlier test givers.
By statute, the Commonwealth has made Anderson's mental condition relevant to whether she is criminally culpable. The court records contained tests that indicated Anderson was mentally retarded. Thus, the psychological testimony that the Commonwealth sought was crucial to the determination of the punishment she received. *903 Fundamental fairness requires that "[u]nder no circumstances should the [prosecution], inherently adversary to a criminal defendant, be allowed to serve as an arm of the court in the selective process." United States v. Matthews, 472 F.2d 1173, 1174 (4th Cir.1973). This principle assumes even greater importance in a juvenile transfer hearing where the Commonwealth itself makes the motion to try the juvenile as an adult and, as required by statute, bears the burden of establishing that the juvenile is not mentally retarded or criminally insane. It is clear that the consequences of a transfer hearing are serious enough that the prosecution should be denied the advantage of choosing the psychiatrist whose testimony could be determinative of whether a juvenile is adjudicated a criminal or determined to be delinquent.
[J]uvenile waiver hearings are hardly "neutral proceedings." Rather, they are fully adversary proceedings in which the burden of establishing a child's probable unamenability to treatment is formally allocated to the state. Similarly, a psychiatrist conducting an examination at the request of the [prosecution] for use in such cases is hardly a person "acting solely in the interest" of the child. To the contrary, the psychiatrist is directly involved in furthering the interests of the child's formal adversary.
R.H. v. State, 777 P.2d 204, 210 (Alaska Ct.App.1989).
Where, as here, Anderson's mental condition was crucial in determining the punishment to be imposed, the evidence relating to the issue was seriously contested, and the court had appointed a private psychologist selected by the prosecution to evaluate Anderson's mental capacity, Anderson was entitled to have advice and testimony of an expert of her own choosing. Accordingly, we hold the circuit court judge abused his discretion in refusing to allow Anderson to be evaluated by a mental health expert not chosen by the prosecution. See Tilton v. Commonwealth, 196 Va. 774, 781-88, 85 S.E.2d 368, 371-76 (1955). See also Code § 19.2-169.5(A); Hogan v. Commonwealth, 5 Va.App. 36, 42, 360 S.E.2d 371, 374-75 (1987) (court has the obligation to appoint an "independent" psychiatrist).
For these reasons, we reverse the conviction and remand this case for proceedings consistent with this opinion.
Reversed and remanded.

Upon a Petition for Rehearing En Banc

Before the Full Court[*]
On October 20, 1992 came the appellee, by the Attorney General of Virginia, and filed a petition praying that the Court set aside the judgment rendered herein on October 6, 1992 and grant a rehearing en banc thereof.
On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on October 6, 1992 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.
The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.
NOTES
[*] Judge Duff participated in the hearing and decision of this case prior to the effective date of his retirement on September 1, 1992 and thereafter by designation pursuant to Code § 17-116.01.
[*] Judge Duff took part in this decision by designation pursuant to Code § 17-116.01.