Present:  Carrico, C.J., Lacy, Keenan, Koontz, and Kinser, JJ.,
Poff and Stephenson, Senior Justices

RONNEY EARL TURNER

v.  Record No. 992005   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                            April 21, 2000
COMMONWEALTH OF VIRGINIA


                  FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal, we consider whether the trial court erred
in permitting the Commonwealth to present evidence of other
crimes committed by a defendant more than 13 years before the
crimes charged in this prosecution.

     Ronney Earl Turner was indicted by a grand jury on charges
including abduction with intent to defile, carjacking in
violation of Code § 18.2-58.1, forcible sodomy, aggravated
sexual battery, two counts of rape, and attempted robbery.  He
was tried by a jury in the Circuit Court of the City of Virginia
Beach, and was found guilty of these offenses.  The jury fixed
his punishment at separate terms of life imprisonment on each of
the rape, abduction with the intent to defile, forcible sodomy,
and carjacking offenses.  The jury also set his punishment at 20
years' imprisonment for sexual battery and ten years'
imprisonment for attempted robbery.  The trial court sentenced
Turner in accordance with the jury verdicts.

Before trial, Turner filed a motion in limine to prevent the Commonwealth from introducing evidence that he had raped and abducted two other women in 1984. Turner argued that the prior crimes were too remote in time and were factually different from the pending charges, which were alleged to have occurred in 1998, rendering the prior offenses irrelevant. Turner also asserted that the prejudicial effect of this evidence would outweigh its probative value.

At a hearing on the motion in limine, the Commonwealth proffered the substance of the proposed testimony and evidence that Turner had been incarcerated from 1986 to 1996 as a result of the prior crimes. The trial court denied Turner's motion, based on the court's conclusion that there was a "close similarity" between the prior crimes and the pending charges. The trial court further stated that the "time factor is minimized by the fact that the defendant . . . was actually incarcerated for a majority of the time that had passed in between the alleged offense[s] here and the prior acts."

Turner filed a petition for appeal in the Court of Appeals challenging the trial court's admission of the evidence of other crimes. The Court of Appeals denied Turner's petition for appeal, concluding that the trial court did not abuse its discretion in admitting the challenged evidence. Turner v.

Commonwealth, Record No. 0495-99-1 (August 3, 1999). We awarded Turner an appeal limited to this same issue.

We will state the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below. Hussen v. Commonwealth, 257 Va. 93, 94, 511 S.E.2d 106, 106 cert. denied, ___ U.S. ___, 119 S.Ct. 1792 (1999). On February 13, 1998, the victim, a 17-year-old high school student, was employed at the Pembroke Shopping Mall in Virginia Beach. The victim left work that evening about 9:00 p.m. and walked across the parking lot to the van that she had driven to work. As she was in the process of placing her belongings inside the van, Turner jumped on her back, cupped her mouth with his hand, and placed a "shining" object to her head that she thought was a gun. Turner told her to "shut up" or he would shoot her.

Turner directed the victim to crouch on the van floor between the two front seats and to look down at the floor. Turner then took the victim's van keys and drove the van for five or ten minutes to an unknown location. After Turner stopped the van, he covered the victim's face with a sweatshirt. He asked her whether she had a boyfriend, what her name was, and where she lived. After directing the victim to remove some of her clothing and threatening to kill her if she resisted, Turner directed her to move to the van's back seat, where he "fondled" her vagina, raped her twice, and orally sodomized her. He then

3

"squirted something" on the victim's vagina and directed her "to rub it in."

After raping the victim, Turner apologized and said that it was "something he had to do before he went to Texas." Turner asked the victim if she had any money and examined the contents of her purse, moving her driver's license from its usual location. Afterward, he drove the van again for a few minutes, during which time the victim remained on the van floor with the sweatshirt covering her face. Upon stopping the van, Turner told the victim that he was going to leave her van key outside the van near the left front tire. He directed the victim to count to 100 before attempting to retrieve the key or he would shoot her. The victim eventually found the key near the front tire of the van, drove to her boyfriend's house, and reported the crimes to the police. During the entire time that Turner was in the van, the victim either had her face to the van floor or had the sweatshirt over her eyes and, thus, was not able to see Turner.

The victim was examined at a hospital later that night, where vaginal swab samples were taken. David A. Pomposini, a forensic scientist at the Virginia Division of Forensic Science laboratory in Norfolk, testified that he found spermatozoa in seminal fluid on the vaginal swabs, and that he isolated DNA from the spermatozoa for analysis. Pomposini submitted the

4

results of his analysis to the Commonwealth's DNA data bank in Richmond. Of the 10,938 DNA profiles on record in the data bank, one profile matched the DNA from the spermatozoa on the vaginal swabs. This matching profile belonged to Turner, who is an African-American.

Pomposini testified that he also analyzed DNA from a blood sample taken from Turner after he became a suspect in the present offenses. Pomposini stated that he analyzed the profile of five "genetic loci" on the DNA from the vaginal swab and concluded that the profile matched the DNA from Turner's blood sample. Pomposini further stated that the probability of randomly selecting an individual in the Black population with the same DNA profile was about one in one hundred million.

The Commonwealth also presented the testimony of the victims in the prior crimes. Each described how she had been abducted and raped by Turner about 14 years earlier. The first prior victim testified that between 4:00 and 5:00 p.m. on September 7, 1984, Turner abducted her just after she entered her car in the parking lot of Military Circle Mall in Norfolk. He reached in through her open car window, placed his hand over her mouth, held either a knife or a gun to the side of her back, and threatened to kill her if she screamed.

Turner instructed her to slide over to the passenger side of the front seat and repeatedly told her not to look at him,

but to keep her head turned. Turner asked her whether she had a boyfriend, and he demanded to see her driver's license to determine where she lived so that he could "get" her if she contacted the police.

Turner drove her in her car to a wooded area, where he ordered her to remove her pants and get out of the car. He inserted his finger in her vagina and then raped her. After raping her, Turner said that he was sorry and then drove her back to a building near Military Circle Mall. He told her to keep her head down and to wait for 15 minutes before retrieving her car key from outside the car. He stated that if she did not wait the specified time, he "would be around." She eventually found her key on the ground on the driver's side of her car. Based on these events, Turner was convicted in 1986 in the Circuit Court of the City of Norfolk of rape and abduction with the intent to defile.

The second prior victim testified that about 9:30 p.m. on December 21, 1984, Turner abducted her from the parking lot of the Janaf Shopping Center in Norfolk, which is located across the street from the Military Circle Mall. She had just entered her car when Turner approached and tapped on her window. After she rolled down her window a little, Turner asked if she had any "jumping cables." She replied that she did not and had begun to

move her car when Turner pointed a gun through the window at her face.

Turner ordered her not to scream and directed her to slide over and "[d]uck down" low on the passenger side of the front seat and to keep her head turned away from him. Turner repeatedly told her to "[d]uck down" and not look at him as he drove her to an area behind the shopping center. He asked her for money and asked where she kept her driver's license. After looking at her license, Turner stated that since he knew where she lived, he would kill her if she told anyone what he had done. He ordered her to remove her panties and performed oral sodomy on her. He then directed her to move to the car's back seat, where he raped her. Before leaving, Turner told her that he would put the car key outside the car, and that she was to wait a specified period of time before attempting to retrieve it. Based on these events, Turner was convicted of abduction in 1986 in the Circuit Court of the City of Norfolk.

After the Commonwealth rested its case, Turner presented an alibi defense in which he testified that he was home with his former wife, Valerie Shoulders, at the time the crimes were committed. Valerie Shoulders also testified that she was with Turner at his home at the time the crimes occurred.

On appeal, Turner argues that the trial court abused its discretion in allowing the Commonwealth to present

7

evidence of the crimes he committed against the prior victims to prove the identity of the perpetrator of the crimes for which he was being tried. He contends that since the prior crimes occurred over 13 years before the crimes for which he was on trial, the evidence concerning the prior crimes lacked probative value.

Turner also argues that several factual differences between the prior crimes and the present offenses rendered the challenged evidence inadmissible as proof of identity. He states that the victim in this case is Caucasian and was 17 years old at time she was attacked, while both prior victims are African-American and were 27 and 29 years old, respectively, at the time of the offenses against them. Turner also notes that the crimes against the prior victims occurred in Norfolk, while the crimes against the victim in this case occurred in Virginia Beach. Finally, he states that the first prior victim was abducted during daylight hours and raped outside her car, while the victim in this case was abducted at night and raped in the back seat of her van. We disagree with Turner's arguments.

The standard governing the admission of evidence of other crimes in the guilt phase of a criminal trial is well established. Evidence that shows or tends to show that a defendant has committed a prior crime is generally inadmissible

to prove the crime charged.  Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998); Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).  There are several exceptions to this general rule.  One exception is that evidence of other crimes is admissible to prove a perpetrator's identity when certain requirements are met.  We discussed these requirements in Chichester v. Commonwealth, 248 Va. 311, 326-27, 448 S.E.2d 638, 649 (1994), cert. denied, 513 U.S. 1166 (1995):

> [O]ne of the issues upon which "other crimes" evidence may be admitted is that of the perpetrator's identity, or criminal agency, where that has been disputed. Proof of *modus operandi* is competent evidence where there is a disputed issue of identity.
>
> . . . .
>
> [E]vidence of other crimes, to qualify for admission as proof of *modus operandi,* need not bear such an exact resemblance to the crime on trial as to constitute a "signature."  Rather, it is sufficient if the other crimes bear a "singular strong resemblance to the pattern of the offense charged."  That test is met where the other incidents are "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof," thus tending to establish the probability of a common perpetrator.
>
> . . . .
>
> If the evidence of other crimes bears sufficient marks of similarity to the crime charged to establish that the defendant is probably the common perpetrator, that evidence is relevant and admissible if its probative value outweighs its prejudicial effect . . . .  The trial court, in the exercise of its sound discretion, must decide which of these competing considerations outweighs the other.  Unless that discretion has been clearly abused, we will affirm the trial court's decision on this issue.

Id. (quoting Spencer v. Commonwealth, 240 Va. 78, 89-90, 393 S.E.2d 609, 616-17, cert. denied, 498 U.S. 908 (1990)(citations omitted)); see also Johnson v. Commonwealth, 259 Va. ___, ___, ___ S.E.2d ___, ___ (2000), decided today; Guill v. Commonwealth, 255 Va. at 138-39, 495 S.E.2d at 491-92.

Applying this standard, we hold that the trial court did not abuse its discretion in admitting the testimony of the prior victims, as well as evidence that Turner was convicted of the prior crimes. While there were minor factual differences among the offenses, they shared several sufficiently idiosyncratic features which, considered as a whole, reflected a pattern in the prior crimes that bore a singular strong resemblance to the pattern of the present offenses, thus tending to prove the probability of a common perpetrator.

In each case, the attacker assaulted his victim in the parking lot of a shopping center in the late afternoon or evening hours. The victim in this case was abducted from a shopping center that is within a 15-minute drive of the shopping centers where the prior crimes were committed. Each victim was assaulted when she entered, or was in the process of entering, her vehicle. The attacker used a weapon in all three cases, and he threatened to kill each victim if she did not cooperate with him. The attacker attempted to obtain or obtained each victim's

name and address, and he handled each victim's driver's license. In each case, the attacker ordered the victim to avoid looking at him, obtained the keys to the victim's vehicle, and drove the victim to a different location.

After raping each victim, the attacker drove each to yet another location where he ordered each victim to wait a certain period of time or to count to a certain number before attempting to leave. The attacker warned each victim that if she left the vehicle before the designated amount of time had elapsed, he would know that fact. In each case, the attacker told the victim he would leave her vehicle keys outside the vehicle, actually left the keys near the vehicle, and fled from the vehicle on foot.

We also conclude that the trial court did not abuse its discretion in concluding that the probative value of this evidence outweighed its prejudicial effect. First, we disagree with Turner's contention that the period of time between the prior crimes and the offenses charged in this case eliminated the probative value of the evidence of the prior crimes. In determining whether a prior crime is too remote in time to be considered by the fact finder, the trial court may consider the length of time that a defendant has been incarcerated between the date of the prior crime and the date of the offense charged. See State v. Davis, 398 S.E.2d 645, 650 (N.C. Ct. App. 1990).

11

Turner was incarcerated in 1986 after being convicted of the prior crimes, which occurred in 1984, and he was imprisoned without interruption from 1986 until two years before the present offenses were committed. Thus, since the prior crimes occurred during the last four years that Turner was not incarcerated before the date of the present offenses, the prior crimes were not too remote in time to be considered by the jury.

Second, we disagree with Turner's argument that the differences among the offenses, such as the race and age of the victims, and the particular locations where the crimes occurred, materially affected the probative value of the challenged evidence. These facts cannot be isolated from the entire record before the trial court which, considered in its entirety, supports the court's discretionary determination.

For these reasons, we will affirm the Court of Appeals' judgment.

Affirmed.