COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and McClanahan
Argued at Alexandria, Virginia


RUBIO ARGELIO ANGEL

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2044-07-4                      JUDGE LARRY G. ELDER
                                                    MARCH 24, 2009
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                           Benjamin N. A. Kendrick, Judge

          Douglas Wham, Deputy Public Defender (Office of the Public
          Defender, on briefs), for appellant.

          Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
          Attorney General, on brief), for appellee.


        Rubio Argelio Angel (appellant) appeals from his jury trial convictions for malicious

wounding, abduction with intent to defile, two counts of object sexual penetration, and

misdemeanor sexual battery, all arising out of attacks on two different women on two different

dates. On appeal, he contends the court erroneously denied his pretrial motion to suppress his

statements to police and dismissed his appeal of the district court's decision to certify him for

trial as an adult. He also contends the trial court erroneously denied his motions for appointment

of a DNA expert, for separate trials, for a continuance, and for a mistrial. We hold the trial court

did not err in denying the motion to suppress and dismissing the appeal of the juvenile court's

certification determination. As to the remaining assignments of error, we hold any error was

harmless. Thus, we affirm appellant's convictions.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

A.

MOTION TO SUPPRESS STATEMENTS TO OFFICERS

Federal constitutional law

> require[s] that a suspect be informed of his constitutional rights to
> the assistance of counsel and against self-incrimination. Miranda
> v. Arizona, 384 U.S. 436, 471, 86 S. Ct. 1602, [1626,] 16 L. Ed. 2d
> 694[, 722] (1966). These rights can be waived by the suspect if the
> waiver is made knowingly and intelligently. Id. at 475, 86 S. Ct.
> [at 1628, 16 L. Ed. 2d at 724]. The Commonwealth bears the
> burden of showing a knowing and intelligent waiver. Id. Whether
> the waiver was made knowingly and intelligently is a question of
> fact that will not be set aside on appeal unless plainly wrong.

Jackson v. Commonwealth, 266 Va. 423, 432, 587 S.E.2d 532, 540 (2003). In determining

whether an individual has voluntarily, knowingly, and intelligently waived his Miranda rights, a

court must conclude

> the relinquishment of the right[s] [was] voluntary in the sense that
> it was the product of a free and deliberate choice rather than
> intimidation, coercion or deception. . . . [T]he waiver must [also]
> have been made with a full awareness of both the nature of the
> right being abandoned and the consequences of the decision to
> abandon it.

Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410, 421 (1986).

Where a juvenile is involved, this inquiry "'includes evaluation of the juvenile's age, experience,

education, background, and intelligence [in order to determine] whether he has the capacity to

understand the warnings given him, the nature of his Fifth Amendment rights, and the

consequences of waiving those rights.'" Roberts v. Commonwealth, 18 Va. App. 554, 557, 445

S.E.2d 709, 711 (1994) (quoting Fare v. Michael C., 442 U.S. 707, 725, 99 S. Ct. 2560, 2572, 61

L. Ed. 2d 197, 212 (1979)); see also Potts v. Commonwealth, 35 Va. App. 485, 495-96, 546

S.E.2d 229, 234, aff'd on reh'g en banc, 37 Va. App. 64, 553 S.E.2d 560 (2001). "'[T]he

presence or absence of a parent, guardian, independent interested adult, or counsel is . . . [but

- 2 -

one] factor to be considered in the totality of the circumstances . . . .'" Rodriguez v. Commonwealth, 40 Va. App. 144, 158, 578 S.E.2d 78, 84 (2003) (quoting Grogg v. Commonwealth, 6 Va. App. 598, 613, 371 S.E.2d 549, 557 (1988)) (upholding waiver by fourteen-year-old suspect).

Here, appellant was seventeen-and-a-half years old when advised of his Miranda rights. He had been in the United States without a parent for five months, during which time he obtained false identification and full time employment. He reported he had completed the 9th grade in El Salvador and that he was capable of reading and writing in Spanish. The detectives' entire interview with him, including the advisement and waiver of rights, was conducted in Spanish and was taped and transcribed. The detectives started their encounter with appellant by inquiring whether he wanted something to drink and when he had last eaten, and they spoke with appellant for several minutes to obtain background information about him and his family. At no time during the encounter did they threaten appellant or raise their voices to him. Detective Ortiz observed that appellant's "Spanish was fairly good" and that he had "a good background in terms of his verbal expressions, how he spoke." The letter of apology appellant later wrote to one of the victims provided further evidence of his literacy.

Detective Ignacio used dual means to advise appellant of his rights. Ignacio showed appellant a written waiver of rights form and read the rights to him from the form. He asked appellant whether he understood each right as Ignacio read it, and he obtained appellant's positive verbal and written response regarding whether he understood each right. He also asked appellant to read aloud the portion of the form stating, "I have read this declaration of my rights and I understand my rights. I am willing to testify and answer the questions. I have not been threatened or made any promises or offers of compensation." Ignacio asked appellant whether he understood what he had read aloud, to which appellant responded, "Yes," and Ignacio asked

appellant whether he had any questions about the form, to which appellant responded, "No." Appellant then signed the form directly beneath the paragraph he had read aloud. At no time did appellant ask to contact a parent, a lawyer, or any other adult. We hold these facts support the trial court's finding that the waiver of rights was voluntary, knowing, and intelligent.

Appellant complains that the detectives used an advisement of rights form for adults rather than the version of the form ordinarily used when interviewing a juvenile. However, appellant failed to elicit from the detectives any information about how the juvenile and adult forms differed. Further, as Detective Ortiz testified, the rights themselves were the same, and the evidence established appellant was less than six months from his eighteenth birthday.

Appellant also complains that the detectives "never expressly asked [him]" whether he wished to waive any of his Miranda rights and that he never "expressly indicate[d] a desire to do so." We disagree. Although "mere silence is not enough" to meet the Commonwealth's burden of proving a knowing, voluntary, and intelligent waiver of one's Miranda rights, appellant acknowledges that "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler, 441 U.S. 369, 373, 99 S. Ct. 1755, 1757, 60 L. Ed. 2d 286, 292 (1979). Here, appellant indicated verbally that he understood each of the rights as it was read to him in his native language of Spanish. He had the opportunity to see each right in print on an advisement of rights form that was entirely in his native language of Spanish, and he wrote an affirmative Spanish response next to each right on the form, again indicating his understanding of it. At Detective Ignacio's request, appellant then read aloud a statement on the form, printed in appellant's native language of Spanish, just like the rest of the form, indicating he understood his rights and was "willing to testify and answer questions." Appellant expressly indicated his willingness to speak to the detectives by signing the form, even

if he did so using his alias of Carlos Zepeda. The record also contains no evidence of duress or coercion on the part of the police.

Detective Ignacio's statement to appellant that "your signature here does not mean that you are guilty of anything, it just means that you understand this form" does not compel a different result. Appellant specifically said he understood his rights as listed on the form and understood the language he read aloud before he signed the form, and Detective Ignacio's statement did not negate the language in the form.

Thus, we conclude the evidence supports the trial court's finding that the Commonwealth proved by a preponderance of the evidence that appellant's waiver of rights was knowing, voluntary, and intelligent.

B.

DUE PROCESS CHALLENGE TO INDICTMENTS BASED ON ALLEGED
LACK OF COMPLIANCE WITH PARENTAL NOTIFICATION PROVISIONS

Appellant contends the juvenile and domestic relations district court's act of certifying all offenses against him for trial in the circuit court pursuant to Code § 16.1-269.1(B) was error because the district court failed to comply with the mandatory parental notification provisions of Code § 16.1-263. Appellant concedes that, pursuant to Code § 16.1-269.1(E), as interpreted in Shackleford v. Commonwealth, 262 Va. 196, 205-06, 547 S.E.2d 899, 904-05 (2001), the issuance of indictments for the charged offenses cured any failure to comply with Code § 16.1-269.1(E)'s parental notification provisions. He contends, however, that neither Shackleford nor Moore v. Commonwealth, 259 Va. 405, 527 S.E.2d 415 (2000), which also considered the statutory notice issue, addressed whether failure to comply with the statutory

- 5 -

notice provisions constituted a denial of due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.[1]

We conclude appellant's argument lacks merit. Appellant has cited no controlling legal authority providing that a juvenile has a due process right to have his parent or guardian notified of the pendency of certification proceedings in juvenile court. Here, as in Rodriguez, 40 Va. App. 144, 578 S.E.2d 78, "[t]he cases [appellant] cites provide, at most, that juvenile proceedings, including transfer proceedings, *when provided for by statute*, '"must measure up to the essentials of due process and fair treatment."'" Id. at 153, 578 S.E.2d at 82 (quoting Anderson v. Commonwealth, 15 Va. App. 226, 229, 421 S.E.2d 900, 902 (1992) (quoting Kent v. United States, 383 U.S. 541, 562, 86 S. Ct. 1045, 1057, 16 L. Ed. 2d 84, 98 (1966))). In appellant's case, although Code § 16.1-263 provides for juvenile proceedings that include notification of the juvenile's parents, since 1996, "the plain language of [Code § 16.1-269.1(E)]" has "provide[d] that an indictment by a grand jury cures *any* defect or error, except one regarding a juvenile's age, which has occurred in *any* juvenile court proceeding." Moore, 259 Va. at 410, 527 S.E.2d at 418. Because the statute expressly provides for cure, appellant received all the process he was due under the statute.

Appellant also relies on our holding in Weese v. Commonwealth, 30 Va. App. 484, 517 S.E.2d 740 (1999), for the proposition that due process "'does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving [the

---

[1] The Commonwealth contends appellant did not preserve this objection for appeal because he had full knowledge of all the facts necessary to raise an objection at the outset of the July 31, 2006 proceeding but remained silent. However, the record indicates appellant raised the issue in a written motion opposing transfer that was filed on September 6, 2006, the same day the court found probable cause to certify the charges. He also raised the issue in the circuit court prior to indictment by means of an appeal noted on September 7, 2006, although the appeal was not heard until December 27, 2006, well after issuance of the indictments on September 18, 2006.

parents] timely notice, in advance of the hearing, of the specific issues that they must meet.'" Id. at 491, 517 S.E.2d at 744 (quoting In re Gault, 387 U.S. 1, 33-34, 87 S. Ct. 1428, 1447, 18 L. Ed. 2d 527, 550 (1967)). This reliance is misplaced. The Virginia Supreme Court has interpreted In re Gault, upon which Weese relies, to apply only to confinement orders and not to certification orders. Cradle v. Peyton, 208 Va. 243, 246-47, 156 S.E.2d 874, 876-77 (1967). The Court explained as follows:

> A confinement order imposes a sentence of confinement in an institution ("however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time" [quoting Gault, 387 U.S.] at 27, 87 S. Ct. at 1443, 18 L. Ed. 2d at 546). A certification order transfers a case to another court for original determination whether the accused shall be confined.
>     The Supreme Court held Gault's confinement under order of the Arizona juvenile court constitutionally invalid because the order denied Gault his liberty without due process. [Appellant] Cradle is not confined under a juvenile court order. The Virginia juvenile court made no finding of [appellant] Cradle's innocence or guilt, only a finding that he should stand trial on the merits in another court. It therefore certified [appellant] Cradle for trial as an adult in the court having jurisdiction to try the charges against him, [the circuit court].

Id. at 246, 156 S.E.2d at 876-77.

In the instant appeal, appellant complains only that the juvenile court certification proceeding was defective and not that any absence of notice in the circuit court violated due process. Because any statutory violation occurred in the context of a certification hearing and was cured by operation of that same statutory scheme, we conclude no due process violation occurred.

C.

## ADMISSION OF OTHER CRIMES EVIDENCE
## AND JOINDER OF OFFENSES FOR TRIAL

We assume without deciding the trial court erred in joining for trial the June 18 offense against S.P. and the July 9 offenses against V.L. Nevertheless, in part because evidence of the July 9 offenses against K.G., Ms. A., and Ms. Z. was admissible in relation to the offenses against both S.P. and V.L., we hold any error in joining the offenses against S.P. and V.L. for trial was harmless.

### 1. Admissibility of Other Crimes Evidence

Evidence of other bad acts or crimes is not admissible merely to show a defendant's predisposition to commit such acts or crimes. See, e.g., Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). However, "'if such evidence tends to prove any other relevant fact of the offense charged, and is otherwise admissible, it will not be excluded merely because it also shows [a defendant] to have been guilty of another crime.'" Williams v. Commonwealth, 203 Va. 837, 841, 127 S.E.2d 423, 426 (1962).

> Where a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence "sanitized" so as to deny the jury knowledge of all but the immediate crime for which he is on trial. The fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as those which preceded it; even though they may show the defendant guilty of other offenses. Evidence of such connected criminal conduct is often relevant to show motive, method, and intent. Indeed, it may be the only way in which such matters may be shown . . . . Even where another crime is not inextricably linked with the offense on trial, it may nevertheless be proved if it shows the conduct and feeling of the accused toward his victim, his motive, intent, [common scheme or plan], *or any other relevant element of the offense on trial*.

Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984) (citations omitted; emphasis added). In addition to intent, another recognized element that other crimes evidence

may be admissible to prove is identity, where identity is in dispute. E.g. Turner v. Commonwealth, 259 Va. 645, 651, 529 S.E.2d 787, 790-91 (2000).

A common plan exists

> when the "relationship among offenses . . . is dependent upon the existence of a plan that ties the offenses together and demonstrates that the objective of each offense was to contribute to the achievement of a goal not attainable by the commission of any of the individual offenses." A conspiracy involving more than one offense is a typical example of offenses involving a common plan. Offenses using a "common plan," however, should be "distinguished from similar character offenses (where the offenses merely duplicate each other)."

Godwin v. Commonwealth, 6 Va. App. 118, 122-23, 367 S.E.2d 520, 522 (1988) (citations omitted); see also Ferrell v. Commonwealth, 11 Va. App. 380, 389-90, 399 S.E.2d 614, 619 (1990) (in upholding joinder of offenses for trial under Rule 3A:6(b), noting that offenses "'need not bear . . . an exact resemblance'" but must "'"bear a singular strong resemblance"'" . . . , thus tending to establish the probability of a common perpetrator" (quoting United States v. Hudson, 884 F.2d 1016, 1021 (7th Cir. 1989) (citation omitted))). "The term 'common scheme' describes crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person or persons as part of a pattern of criminal activity involving certain identified crimes." Scott v. Commonwealth, 274 Va. 636, 644-45, 651 S.E.2d 630, 635 (2007) (finding roughly equivalent the terms "common scheme or plan" as used in Rule 3A:6(b) and the "common scheme, design, or plan" language employed to evaluate the admissibility of other crimes evidence in cases of disputed identity); see Cook v. Commonwealth, 7 Va. App. 225, 229, 372 S.E.2d 780, 782 (1988) (holding joinder was appropriate for separate offenses of concealment that occurred within thirty minutes of each other at three separate 7-Eleven stores in the same area, involving the same *modus operandi* and same people).

In Satcher v. Commonwealth, 244 Va. 220, 229, 421 S.E.2d 821, 827 (1992), for example, the Court held that two attempted rapes and robberies, which occurred within a few yards and one-half hour of each other and involved "forcibl[e] remov[al of] each of the victims from a bicycle path at a location concealed behind the 'sound barrier wall,'" "constituted parts of a common scheme or plan." The Court also noted the facts in Satcher were distinguishable from those in Godwin, in which "the two robberies in issue occurred five days and three and one-half miles apart and 'no evidence linked or connected the one robbery with the other.'" Id. at 231 n.6, 421 S.E.2d at 828 n.6 (quoting Godwin, 6 Va. App. at 122, 367 S.E.2d at 522); see also Scott, 274 Va. at 646-47, 651 S.E.2d at 636 (unanimously concluding that the evidence of nine robberies, of individuals "alone outside their homes during the late evening hours," that occurred over "a period of about four months in the same large city" and were committed by a black male who displayed a gun, threatened or struck each victim, and demanded "money, credit cards and, in some cases, their PINs," did not establish a common scheme because "[t]his evidence demonstrated only a general similarity of manner . . . and failed to establish that the crimes shared idiosyncratic features permitting an inference of a pattern of criminal activity committed by the same person"). The Court has listed as "possible" examples of the "very broad" "range of idiosyncratic features" (1) the occurrence of the crimes in a "particular neighborhood or area," (2) the use of "a weapon of the same description," (3) the utterance of "unusual threatening remarks," and (4) the targeting of "victims only of a certain gender or age group." Scott, 274 Va. at 647, 651 S.E.2d at 636.

We apply these principles to assessing the admissibility of the offenses against K.G., Ms. A., and Ms. Z. at a trial for the July 9 offenses against V.L. Although the Commonwealth offered evidence that appellant confessed to perpetrating the attack on V.L. and that blood found on appellant's shoe belonged to V.L., thereby linking appellant to the crimes against V.L.,

appellant disputed the accuracy of that DNA evidence and implied that his confession to the offenses was "[in]accura[te] and [un]truthful[]." Because appellant disputed his identity as the perpetrator of the offenses against V.L. on July 9, the Commonwealth was entitled to offer evidence of the preceding July 9 crimes for purposes of linking appellant to the battery of K.G., the first victim of the July 9 offenses, who was able to make a positive identification of appellant as her attacker, *if* the evidence established the series of crimes committed on July 9 showed a common scheme or plan.

As to the three groupings of offenses that occurred on July 9, we hold the evidence supported a finding that they were, in fact, part of a common scheme or plan. Although the July 9 crimes were not identical in nature or severity, they bore a strong temporal and geographic link, and additional evidence tied them to one another, as well. All occurred in the same one-hour period within a distance of one-and-one-half to three miles of each other. All also appeared to involve the sexual touching of women below the waist in public by a male who fled on a green moped or motorbike. Witnesses at the first and third locations identified the perpetrator as appearing to be young and Hispanic. Thus, the evidence tended to indicate that the same man rode his motorbike in a northeasterly path from Alexandria into Arlington as he committed the series of offenses leading up to his attack on V.L. The probative value of this evidence, which included K.G.'s positive identification of appellant as the man who sexually battered her and fled on the green moped, outweighed any incidental prejudice, for the violent felony offenses committed against V.L. were far more severe than the misdemeanor offenses committed roughly thirty and sixty minutes earlier in Alexandria.

We turn now to the question whether the two different incidents of misdemeanor sexual battery in Alexandria on July 9 were admissible to prove identity on the charge of misdemeanor

- 11 -

sexual battery stemming from the June 18 incident against S.P.  We hold that they were because the evidence permitted a finding that all three events were part of a common scheme or plan.

All three sets of offenses occurred in a public location on a Sunday afternoon within a three-week period, at a location within a few miles of the border between the City of Alexandria and Arlington County.  Each set of offenses involved a sexual battery or batteries committed by a man who came up behind his female victims, all of whom were on foot, and focused his attention on their buttocks.  In the first two instances, the man, who was Hispanic, stooped down within view of the woman while pretending to take care of some personal matter—tying his shoe in one case and working on his motorbike in another—and waited for the victim to pass by him before he came up behind her.  In all three instances, the perpetrator said nothing, used his hands to make brief contact with the woman's buttocks or the clothing covering her buttocks, and fled quickly after making the contact that constituted sexual battery.  See Scott, 274 Va. at 645, 651 S.E.2d at 635 (defining "[t]he term 'common scheme' [as] describ[ing] crimes that share features idiosyncratic in character, which permit an inference that each individual offense was committed by the same person . . . as part of a pattern of criminal activity *involving certain identified crimes*" (emphasis added)).  The fact that the perpetrator fled the scene of the first sexual battery on foot whereas the perpetrator of the second and third sets of sexual batteries, committed exactly three weeks later, fled on a motorbike does not preclude a finding that the evidence of the second and third offenses was admissible to prove a common scheme or plan because it was not necessary that the sexual batteries be *identical*.  See id. (noting that "a 'singular strong resemblance to the pattern of the offense charged'" will suffice (quoting Turner, 259 Va. at 651, 529 S.E.2d at 791)).

Thus, we hold the evidence of the July 9 sexual batteries against K.G., Ms. A., and Ms. Z. was admissible in the trial of both the June 18 sexual battery involving S.P. and the July 9 felony offenses involving V.L.

### 2. Harmless Error Concerning Joinder

Assuming without deciding the court's refusal to sever the offense against S.P. from the offenses against V.L. for trial was error, reversal is not required if any error was harmless. See Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (holding pursuant to Code § 8.01-678 that "harmless-error review is required in all cases"). Because the challenged other crimes evidence—concerning the misdemeanor sexual batteries of July 9 to which appellant pleaded guilty—was admissible in the trial of both the June 18 sexual battery involving S.P. and the July 9 felony offenses involving V.L., the admission of this evidence at the joint trial did not render the joinder harmful. Thus, we examine the impact of the evidence of the offense against S.P. in a trial for the crimes against V.L. and vice versa.

The Supreme Court has held that "misapplication of Rules 3A:10[(c)] and 3A:6(b) [governing the joinder of offenses for trial] would not constitute reversible error . . . [if], in a separate trial of [one of the joined crimes or sets of crimes], evidence of the [other joined crime or set of crimes] would have been admissible," Satcher, 244 Va. at 230, 421 S.E.2d at 827 (decided under earlier version of Rule 3A:10, when relevant subdivision was designated (b) rather than (c)), but this is not the only acceptable method for assessing the impact of a misjoinder of offenses for trial. In determining whether an error is harmless, we review "the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." Lavinder v. Commonwealth, 12 Va. App. 1003, 1007, 407 S.E.2d 910, 912 (1991) (en banc). Non-constitutional error is harmless "when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the

merits and substantial justice has been reached." Code § 8.01-678. "'If, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, . . . the judgment should stand . . . .'" Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557, 1566-67 (1946)). Non-constitutional error is harmless if other evidence of guilt is so "overwhelming" and the error so insignificant by comparison that we can conclude the error "failed to have any 'substantial influence' on the verdict." United States v. Lane, 474 U.S. 438, 450, 106 S. Ct. 725, 732, 88 L. Ed. 2d 814, 826 (1986) (quoting Kotteakos, 328 U.S. at 765, 66 S. Ct. at 1248, 90 L. Ed. at 1567).

Applying these principles here, we conclude that the evidence of appellant's guilt for the crimes against V.L. was overwhelming and that, if the joinder of those offenses for trial with the charge of misdemeanor sexual battery against S.P. was error, any such error clearly was harmless as to the convictions involving V.L. Appellant confessed in a recorded statement to detectives that he beat V.L. and committed most of the other charged crimes against her[2] before fleeing on a green motorbike, and significant additional evidence corroborated his confession. A witness observed a man matching appellant's description flee the scene of V.L.'s attack on a green motorbike. Only an hour earlier a man of similar description committed misdemeanor sexual battery by grabbing the buttocks of a different woman, K.G., in a parking lot a few miles away. K.G. affirmatively identified appellant as the man who grabbed her and indicated he fled the scene on a green motorbike. Finally, DNA evidence obtained from blood on appellant's shoe was determined to have come from V.L. In light of this overwhelming evidence of guilt, we are able to conclude that any error resulting from joining the offenses against V.L. for trial with the

---

[2] Appellant denied penetrating her anus with the stick found there when she arrived in the emergency room. The presence of the stick served as the basis for one of the object sexual penetration convictions.

misdemeanor sexual battery offense committed against S.P. three weeks earlier, in which a man pulled down the victim's shorts and fled without touching her, had no more than "'slight effect'" on the verdicts involving V.L. and thus was harmless. Clay, 262 Va. at 260, 546 S.E.2d at 732 (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. at 1566).

We reach the same result in analyzing the effect of evidence of the crimes against V.L. on appellant's conviction for misdemeanor sexual battery of S.P. on June 18. We assume without deciding that the evidence of the crimes against V.L. would have been inadmissible at a separate trial for the offense against S.P. because appellant conceded the evidence proved the perpetrator of the offense against S.P. acted with the requisite intent and challenged only the evidence to prove his identity as the perpetrator. See Blaylock v. Commonwealth, 26 Va. App. 579, 592, 496 S.E.2d 97, 103 (1998) (holding that where evidence of other crimes or "independent acts" is relevant to prove an element that is "genuinely uncontested, any nominal probative value will be easily outweighed by the danger of prejudice"). Nevertheless, the admissible evidence proving appellant was the perpetrator of the June 18 misdemeanor near Thomas Jefferson Middle School also was overwhelming. Appellant admitted committing the misdemeanor sexual batteries against K.G., Ms. A., and Ms. Z. on July 9, which involved methods similar to the method employed by the perpetrator of the June 18 misdemeanor sexual battery against S.P., and one of the victims of the July 9 offenses identified appellant as the man who grabbed her buttocks on that date. S.P. gave a description of her assailant that was consistent with appellant's appearance. She also described her assailant as wearing "a three-buttoned polo shirt that was . . . regularly striped yellow and white with probably a thin line of navy blue," and a shirt matching that description was found in appellant's clothes hamper during a search of his residence about six weeks later. Finally, the evidence established appellant resided half a mile from Thomas Jefferson Middle School, and when a detective questioned appellant about whether he had

- 15 -

committed any offenses similar to the misdemeanor sexual batteries he admitted committing against K.G., Ms. A., and Ms. Z. in Alexandria on July 9, specifically one near "T.J." "school," appellant responded, "Once." When the detective asked appellant if he committed that offense before the July 9 Alexandria offenses, appellant said, "Yes." This provided overwhelming evidence that appellant was the perpetrator of the June 18 misdemeanor sexual battery against S.P., and thus, any error in joining for trial that offense with the offenses against V.L. was harmless on the issue of guilt or innocence.

Any error also was harmless as to appellant's sentence for the June 18 misdemeanor sexual battery offense. Pursuant to Code § 16.1-272, the trial court rather than the jury sentenced appellant. Where evidence is admissible for only a limited purpose, we presume the trial judge, unlike a jury, is able to consider that evidence only for the purpose for which it is admissible. E.g. Akers v. Commonwealth, 216 Va. 40, 45, 216 S.E.2d 28, 31 (1975). The trial court is presumed to know and properly apply the law absent clear evidence to the contrary in the record. Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). Thus, we presume the trial court did not consider the nature and severity of appellant's crimes against V.L. in determining appellant's sentence for the misdemeanor sexual battery offense.

D.

MOTION FOR APPOINTMENT OF A DNA EXPERT

Assuming without deciding that the trial court's denial of appellant's request for appointment of a DNA expert was error, we conclude any error was harmless. See Sanchez v. Commonwealth, 41 Va. App. 340, 585 S.E.2d 337 (2003) (holding that a denial of expert assistance in violation of Ake v. Oklahoma,, 470 U.S. 68, 76-87, 105 S. Ct. 1087, 1092-98, 84 L. Ed. 2d 53, 61-68 (1985), which requires a state to provide a defendant with expert assistance

where necessary to "assure that the defendant has a fair opportunity to present his defense," is trial error subject to harmless error analysis).

"'[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt;' otherwise the conviction under review must be set aside." Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710-11 (1967)). "An error does not affect the verdict if we can determine, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Cairns v. Commonwealth, 40 Va. App. 271, 286, 579 S.E.2d 340, 347 (2003).

We applied harmless error principles in Sanchez, in which the Commonwealth obtained DNA evidence linking appellant to the driver's seat of a stolen vehicle for purposes of his carjacking trial and Sanchez moved the court for funds to hire his own DNA expert. Sanchez, 41 Va. App. at 352-53, 585 S.E.2d at 343-44. We concluded the court's denial of Sanchez's motion for appointment of an expert, although error, was harmless because "Sanchez confessed to the carjacking, describing his actions on the date in question in detail, and corroborating [the witness'] testimony identifying him as the carjacker." Id. In addition, the Commonwealth's evidence included a "shoe impression, found on the inside of the driver's window," which was consistent with a shoe belonging to Sanchez and, thus, also "implicated him as the perpetrator of the carjacking." Id. at 353, 585 S.E.2d at 344. We held "the overwhelming evidence of Sanchez's guilt" rendered "the error . . . harmless beyond a reasonable doubt." Id.; cf. Commonwealth v. Sanchez, 268 Va. 161, 164-67, 597 S.E.2d 197, 199-200 (2004) (in a related case against the same defendant, reversing the decision by the Court of Appeals but holding the trial court's failure to appoint the requested expert was not error in regard to a charge of felony

hit-and-run that occurred while driving the car that had been taken in the carjacking), rev'g 41 Va. App. 319, 585 S.E.2d 337 (2003).

Similarly in appellant's case, appellant confessed to the crimes against V.L., the offenses to which the DNA evidence pertained, in a detailed, fully recorded confession, and additional circumstantial evidence also linked appellant to those crimes. A witness testified he saw a man matching appellant's description flee the scene of the crimes against V.L. on a green motorbike, and a woman, K.G., battered about an hour earlier by an assailant who also fled on a green motorbike identified appellant as the perpetrator of the offense against her. Thus, here, as in Sanchez, the trial court's denial of appellant's motion for funds to hire a DNA expert, if error, was harmless beyond a reasonable doubt as to his convictions for the offenses against V.L. and also as to the offense against S.P.

Given that appellant's motion for a continuance was based solely on the need for additional time to review the DNA evidence, we hold that the denial of the continuance motion, if error, was harmless for the same reasons that refusal to provide funds for a DNA expert was harmless.

E.

MISTRIAL MOTION

The Commonwealth contends appellant waived his claim that some of its arguments in rebuttal were improper because he failed to make a timely motion for a mistrial. We agree.

We are bound by the Supreme Court's repeated holding that if a defendant desires "to take advantage on appeal of some incident he regards as objectionable enough to warrant a mistrial, he must make his motion timely or else be deemed to have waived his objection. Making a timely motion for mistrial means making the motion 'when the objectionable words were spoken.'" Yeatts v. Commonwealth, 242 Va. 121, 137, 410 S.E.2d 254, 264 (1991)

- 18 -

(quoting Reid v. Baumgardner, 217 Va. 769, 774, 232 S.E.2d 778, 781 (1977)) (citations

omitted).

> "If counsel believes that an argument requires or justifies a
> mistrial, he has the duty to move promptly *before conclusion of the
> argument* so that the trial court may determine what corrective
> action, if any, should be taken." There appears to be no exception
> in Virginia law to the strict application of this rule.

Bennett v. Commonwealth, 29 Va. App. 261, 281, 511 S.E.2d 439, 448-49 (1999) (quoting

Pullen v. Nickens, 226 Va. 342, 346-47, 310 S.E.2d 452, 454-55 (1983)) (emphasis added); see

Beavers v. Commonwealth, 245 Va. 268, 278-79, 427 S.E.2d 411, 419 (1993) (holding that the

complainant's failure to object and move for a mistrial until the conclusion of an *opening*

statement constituted a waiver of its arguments on appeal). This rule applies even where the

defendant makes an objection to the argument that is overruled by the trial court. Morris v.

Commonwealth, 14 Va. App. 283, 287, 416 S.E.2d 462, 464 (1992) (en banc). Compare Burns

v. Commonwealth, 261 Va. 307, 340-42, 541 S.E.2d 872, 894-95 (2001) (where counsel made a

general objection to the prosecutor's reference to the defendant as "an 'animal'" and

*contemporaneously* "*advised the court that he had a motion that he would make after the*

*Commonwealth's Attorney finished his closing argument*," holding "the better practice would

have been to move for a mistrial at that very moment" but that the Court "[could not] say under

the circumstances of this case that [the defendant's] motion came too late" (emphasis added)).

Here, appellant's only contemporaneous objection to the Commonwealth's remarks was

his contention—as the Commonwealth began to recount what the victim did leading up to the

attack— that the Commonwealth's argument was "not rebuttal" because "[it was] not answering

any of the facts that [appellant's counsel had] raised." At the very conclusion of the

Commonwealth's argument, appellant's counsel stated, "I have a continuing objection," but he

did not articulate any basis for that objection. Only after the trial court had instructed the jury to

- 19 -

"retire" for the purpose of deciding whether to begin deliberations that evening or the following morning did appellant move for a mistrial and first articulate his claim that the prosecutor's argument constituted an improper attempt "to inflame the passion of the jury and to seek sympathy." Under the principles outlined above, appellant's motion came too late.

Appellant avers in the alternative that we should apply Rule 5A:18's "good cause" or "ends of justice" exception to this issue. However, because it is not apparent from the face of the record that an error occurred that was "clear, substantial and material," Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989); see Campbell v. Commonwealth, 14 Va. App. 988, 997, 421 S.E.2d 652, 657 (1992) (en banc) (Barrow, J., concurring), aff'd in part and rev'd in part, 246 Va. 174, 431 S.E.2d 648 (1993), the ends of justice exception does not require us to reach the merits in the absence of a proper objection. Although a prosecutor must not attempt to inflame the passions and prejudices of the jury, see, e.g., Hutchins v. Commonwealth, 220 Va. 17, 20-21, 255 S.E.2d 459, 461 (1979), she may properly review all reasonable inferences deducible from the evidence, see, e.g., Duncan v. Commonwealth, 2 Va. App. 717, 730, 347 S.E.2d 539, 546 (1986). The fact that the Commonwealth asked the jury to "take a moment . . . and . . . try to imagine [the victim's] pain" after it recounted the sequence of events the victim experienced before, during, and after the offenses did not compel the conclusion that the statement was improper or, even if it was, that a mistrial was required to cure any prejudice. Compare McReynolds v. Commonwealth, 177 Va. 933, 945-47, 15 S.E.2d 70, 74-75 (1941) (reversing a murder conviction because the trial court failed to caution the jury following the prosecution's repeated improper references in closing argument to the murder victim's mother, whom he described as old, "palsied," unable to attend the trial, living in a "decayed" "humble home," and "griev[ing] for the loss of her boy").

## II.

For these reasons, we hold the trial court did not err in denying the motion to suppress and dismissing the appeal of the juvenile court's certification determination.  As to the remaining assignments of error, we hold any error was harmless.  Thus, we affirm appellant's convictions.

Affirmed.