COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Humphreys
Argued at Alexandria, Virginia


JOSE RODRIGUEZ
                                          OPINION BY
v.   Record No. 2078-01-4            JUDGE LARRY G. ELDER
                                         MARCH 25, 2003
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Henry E. Hudson, Judge

          Jeanne E. Klapps, Assistant Public Defender
          II (Thomas H. Estes, Jr., Deputy Public
          Defender; Office of the Public Defender, on
          brief), for appellant.

          Michael T. Judge, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     Jose Rodriguez (appellant), a juvenile, appeals from his

jury trial conviction for second degree murder.  Appellant was

fourteen years old at the time of the offense.  On appeal, he

challenges the constitutionality of Code § 16.1-269.1(B), which

provides for certification to the grand jury of specified

charges of murder or aggravated malicious wounding allegedly

committed by a juvenile fourteen years of age or older upon a

finding of probable cause.  In the alternative, he argues the

trial court erroneously refused to suppress his statements to

police, contending that his waiver of <u>Miranda</u> rights was not

knowing and intelligent and that his waiver and statements were involuntary.

We hold that certification without a transfer hearing as required by statute did not violate appellant's constitutional rights. We hold further that the evidence, viewed in the light most favorable to the Commonwealth, meets the minimum standards required to support the trial court's conclusion that appellant's waiver of rights and confession were knowing, intelligent and voluntary. Thus, we affirm.

## I.

## BACKGROUND[1]

On July 30, 2000, appellant was taken into custody for the alleged murder of Mario Rubio-Martinez (the victim) in violation of Code § 18.2-32. On August 25, 2000, the juvenile and domestic relations district court (district court) conducted a preliminary hearing pursuant to Code § 16.1-269.1(B). The district court found that appellant was fourteen years of age or older at the time of the charged offense and that probable cause existed to believe appellant committed that offense. It certified the charge to the grand jury, which indicted appellant for murder.

---

[1] In reviewing the denial of a motion to suppress, we view the evidence adduced at the suppression hearing and at trial in the light most favorable to the Commonwealth. See, e.g., DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987).

Prior to trial, appellant moved to suppress statements he made to police when he was interrogated at the police station shortly following the murder on the ground that the statements were involuntary. The trial court made specific findings of fact regarding appellant's courtroom demeanor and level of sophistication, and it denied appellant's motion to suppress his statements as involuntary.

Appellant then moved to dismiss on the ground that the automatic certification provisions of Code § 16.1-269.1(B) were a violation of his substantive due process rights and right to counsel. The trial court denied that motion, as well.

In his subsequent jury trial, appellant was convicted for second degree murder, and he noted this appeal.

II.

ANALYSIS

A.

CONSTITUTIONALITY OF AUTOMATIC CERTIFICATION PROCEDURE

Code § 16.1-269.1 provides in relevant part as follows:

> A. Except as provided in subsections B and C, if a juvenile fourteen years of age or older at the time of the alleged offense is charged with an offense which would be a felony if committed by an adult, the court shall, on motion of the attorney for the Commonwealth and prior to a hearing on the merits, hold a transfer hearing and may retain jurisdiction or transfer such juvenile for proper criminal proceedings to the appropriate circuit court having criminal jurisdiction of such offenses if committed by an adult. Any transfer to the

appropriate circuit court shall be subject to the . . . conditions [enumerated in the statute].

B.  The juvenile court shall conduct a preliminary hearing whenever a juvenile fourteen years of age or older is charged with murder in violation of §§ 18.2-31, 18.2-32 or § 18.2-40, or aggravated malicious wounding in violation of § 18.2-51.2.

C. . . . .

D. Upon a finding of probable cause pursuant to a preliminary hearing under subsection B . . . , the juvenile court shall certify the charge, and all ancillary charges, to the grand jury. . . .

On appeal, appellant concedes the district court acted in accordance with Code § 16.1-269.1.  However, citing Kent v. United States, 383 U.S. 541, 553-54, 86 S. Ct. 1045, 1053-54, 16 L. Ed. 2d 84 (1966), appellant contends he had a constitutional right to a transfer hearing and to representation by counsel at that hearing before being stripped of his juvenile status and being tried as an adult.  We disagree with appellant's characterization of Kent and hold that no constitutional right exists to a transfer hearing.

Kent involved a juvenile arrested for various crimes allegedly committed in the District of Columbia.  Under the existing statutory scheme, he was subject to the exclusive jurisdiction of the District of Columbia Juvenile Court unless that court, after "'full investigation,'" chose to "'waive jurisdiction and order the child held for trial under the

regular procedure of the court which would have jurisdiction of such offense if committed by an adult,'" the United States District Court for the District of Columbia. 383 U.S. at 542-48, 86 S. Ct. at 1048-51 (quoting D.C. Code § 11-914 (1961)). The juvenile court waived jurisdiction, and Kent challenged that waiver "on a number of statutory and constitutional grounds," contending, inter alia, that the waiver was defective because the juvenile court held no hearing, made no findings, stated no reasons for the waiver, and denied counsel access to information which, presumably, it relied on in making its decision. Id. at 552, 86 S. Ct. at 1053.

In concluding that the juvenile court's order waiving jurisdiction was invalid, the Court held the statute provided the juvenile court with "considerable latitude" but that "it assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory requirement of a 'full investigation.'" Id. at 552-53, 86 S. Ct. at 1053. It noted further,

> [T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony -- without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner. It would be extraordinary if society's special concern for children, as reflected in the District of Columbia's Juvenile Court

Act, permitted this procedure. We hold that it does not.

\* \* \* \* \* \* \*

The net, therefore, is that petitioner -- then a boy of sixteen -- was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the "exclusive" jurisdiction of the Juvenile Court. In these circumstances, . . . we conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel.

Id. at 554-57, 86 S. Ct. at 1053-55 (emphases added). Thus, the

Court's references to Kent's constitutional rights to due

process and counsel arose in the context of the hearing and

other procedures expressly provided for by the transfer statute

at issue in that case.

The Court in Kent resolved any doubt about the basis for

its decision by stating that it declined

the invitation to rule that constitutional guarantees which would be applicable to adults charged with the serious offenses for which Kent was tried must be applied in juvenile court proceedings concerned with allegations of law violations. The Juvenile Court Act and the decisions of the United States Court of Appeals for the District of Columbia provide an adequate basis for decision of this case, and we go no further.

Id. at 556, 86 S. Ct. at 1054-55 (emphasis added) (footnote omitted); see also In re Gault, 387 U.S. 1, 66 n.1, 87 S. Ct. 1428, 1464 n.1, 18 L. Ed. 2d 527 (1967) (Harlan, J., concurring in part and dissenting in part) (noting that Kent "did not purport to rest on constitutional grounds").  The Virginia Supreme Court has expressly agreed with this interpretation, characterizing Kent as "upholding the right to assistance of counsel in juvenile court proceedings . . . [under] the Juvenile Court Act of the District of Columbia, not on the right to assistance of counsel under the Sixth Amendment."  Cradle v. Peyton, 208 Va. 243, 245-47, 156 S.E.2d 874, 876-77 (1967).

Appellant has cited no controlling legal authority providing that a juvenile defendant has a constitutional right to a transfer hearing before being treated as an adult.  The cases he cites provide, at most, that juvenile proceedings, including transfer proceedings, when provided for by statute, "'must measure up to the essentials of due process and fair treatment.'"  Anderson v. Commonwealth, 15 Va. App. 226, 229, 421 S.E.2d 900, 902 (1992) (quoting Kent, 383 U.S. at 562, 86 S. Ct. at 107); see Cheeks v. Commonwealth, 20 Va. App. 578, 583-86, 459 S.E.2d 107, 109-11 (1995) (holding that procedure for juvenile transfer appeal review in circuit court under former Code § 16.1-269(E) was jurisdictional and that failure to provide juvenile with statutory review that complied with due process as "spelled out in Kent" required that juvenile's

convictions be vacated); see also Lewis v. Commonwealth, 214 Va. 150, 153, 198 S.E.2d 629, 631 (1973) (noting United States Supreme Court's holdings that, "in juvenile hearings to adjudicate delinquency[,] . . . a juvenile is entitled to adequate notice of the charge, the right to counsel, the right to confrontation and cross-examination of witnesses and the privilege against self-incrimination" but "refusing to extend the right to trial by jury to state juvenile delinquency proceedings").

Finally, as the Commonwealth points out, the Virginia Supreme Court has expressly held that "the Constitution 'does not require juvenile transfer hearings nor does it require additional procedural safeguards for juveniles tried [for] capital crimes.'" Thomas v. Commonwealth, 244 Va. 1, 7, 419 S.E.2d 606, 609 (1992). Although appellant contends this language was dicta, the Court relied on this statement as one of several bases supporting its conclusion that the accused was not entitled to retract a waiver of his statutory right to a transfer hearing. Id.; see also Deiter v. Commonwealth, 205 Va. 771, 775, 139 S.E.2d 788, 791 (1965) (noting that dicta is language that is "not responsive to the question presented and . . . not necessary to a disposition of the case").

The Supreme Court repeated this holding in Wright v. Commonwealth, 245 Va. 177, 182-83, 427 S.E.2d 379, 384 (1993), in which a juvenile challenged the transfer provisions of former

Code § 16.1-269 on Eighth Amendment grounds.  Although the applicable version of the transfer statute did not list any offenses for which trial as an adult was mandatory, it provided for a transfer hearing on motion of the Commonwealth's Attorney for any juvenile "15 years of age or older . . . charged with an offense that, if committed by an adult, could be punishable by confinement in a state correctional facility."  Id. at 181 & n.1, 427 S.E.2d at 383 & n.1.  Wright contended the statute violated his Eighth Amendment rights because it did not "mandate [individualized] consideration of his moral responsibility and psychological maturity."  Id. at 182, 427 S.E.2d at 384.  In denying Wright's claim, the Court characterized Thomas as "[holding] that the Constitution does not require transfer hearings or additional procedural safeguards for juveniles tried for capital offenses."  Id. at 183, 427 S.E.2d at 384; see Novak v. Commonwealth, 20 Va. App. 373, 382-83, 457 S.E.2d 402, 406-07 (1995) (under version of transfer statute providing that "'the court may certify the child without making the [amenability to treatment] finding'" when "'the alleged delinquent act is armed robbery, rape . . . or murder,'" holding that certification based solely on fact that charged offense was murder and not on finding of "unamenab[ility] 'to treatment or rehabilitation'" as juvenile violated neither equal protection nor due process (quoting former Code § 16.1-269(A)(3)(b) (emphasis added)); see also Hughes v. Commonwealth, 39 Va. App. 448, 454-63, 573 S.E.2d

324, 327-30 (2002) (addressing validity of Code § 16.1-269.1 and operation of provision divesting juvenile court of jurisdiction upon transfer pursuant to subsection (B) or (C) in case where offense for which defendant ultimately was convicted was not violent felony enumerated in subsection (B) or (C) but rather a lesser-included offense).

Thus, we reject appellant's claim that Code § 16.1-269.1 is unconstitutional because it presumes juveniles fourteen years of age and older who commit the serious crimes listed in that code section are not amenable to treatment as juveniles and gives them no opportunity to have a juvenile court make a determination regarding such amenability.

B.

DENIAL OF MOTION TO SUPPRESS

A suspect must knowingly and intelligently waive his rights against self-incrimination and to the assistance of legal counsel in order for a confession made during a custodial interrogation to be admissible in evidence against him. Morris v. Commonwealth, 17 Va. App. 575, 579, 439 S.E.2d 867, 870 (1994). Even when a suspect has waived his Miranda rights, his confession is inadmissible if it was involuntary for other reasons. See id. At a hearing on a defendant's motion to suppress a confession, the Commonwealth must prove by a preponderance of the evidence both that the accused knowingly, intelligently and voluntarily waived his Miranda rights and that

the confession itself was voluntary.  Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 722-23 (1992).  Appellant challenges both the waiver of his rights and the voluntariness of his statements.

"[T]he inquiry whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness."  Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).[2]  In considering this issue, "'[the trial court] evaluates the credibility of the witnesses, resolves any conflicts in their testimony, and weighs the evidence as a whole.'"  Id. (quoting Watkins v. Commonwealth, 229 Va. 469, 477, 331 S.E.2d 422, 429 (1985)).  A finding as to whether the waiver of Miranda rights was knowing and intelligent must be based on the totality of the circumstances and "'will not be disturbed on appeal unless plainly wrong.'"  Id. (quoting Watkins, 229 Va. at 477, 331 S.E.2d at 430).

"Whether a statement is voluntary is ultimately a legal rather than a factual question, but subsidiary factual decisions

---

[2] Appellant contends that this standard of review is "wrong" and that Virginia courts "ought to undertake an independent review of" the voluntariness of one's waiver of Miranda rights, just as they do in reviewing the voluntariness of a confession, see textual discussion infra.  Because appellant cites no controlling authority for this assertion, we consider ourselves bound by Harrison and do not entertain appellant's claim regarding the standard of review in this appeal.

are entitled to a presumption of correctness." Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992) (citing Miller v. Fenton, 474 U.S. 104, 110, 112, 106 S. Ct. 445, 449, 450, 88 L. Ed. 2d 405 (1985)). Thus, "we are bound by the trial court's subsidiary factual findings unless those findings are plainly wrong." Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992).

In determining whether an individual has voluntarily, knowingly and intelligently waived his Miranda rights, a court must conclude

> the relinquishment of the right [was]
> voluntary in the sense that it was the
> product of a free and deliberate choice
> rather than intimidation, coercion or
> deception. . . . [T]he waiver must [also]
> have been made [knowingly and
> intelligently,] with a full awareness of
> both the nature of the right being abandoned
> and the consequences of the decision to
> abandon it.

Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986). Proof of "coercive police activity is . . . a necessary predicate to a finding that a waiver of Miranda rights is not voluntary." United States v. Cristobal, 293 F.3d 134, 141 (4th Cir. 2002). Determining whether a waiver was knowing and intelligent, "[w]here a juvenile is involved, '. . . includes evaluation of the juvenile's age, experience, education, background, and intelligence [in order to determine] whether he has the capacity to understand the warnings given

him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.'"  Roberts v. Commonwealth, 18 Va. App. 554, 557-58, 445 S.E.2d 709, 711 (1994) (quoting Fare v. Michael C., 442 U.S. 707, 717, 99 S. Ct. 2560, 2567, 61 L. Ed. 2d 197 (1979)); see also Potts v. Commonwealth, 35 Va. App. 485, 495-96, 546 S.E.2d 229, 234, aff'd on reh'g en banc, 37 Va. App. 64, 553 S.E.2d 560 (2001). An individual's repeated exposure to Miranda warnings may weigh in favor of concluding that the individual knowingly and intelligently waived those rights.  Correll v. Commonwealth, 232 Va. 454, 464, 352 S.E.2d 352, 358 (1987).

Assessing whether a confession is voluntary requires an examination of the totality of the circumstances to determine whether the statement is the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired."  Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S. Ct. 2041, 2046, 36 L. Ed. 2d 854 (1973).  Just as in assessing whether the waiver of one's Miranda rights was knowing and intelligent, a court determining whether a confession was voluntary must consider both "the details of the interrogation" and "the characteristics of the accused."  Kauffmann v. Commonwealth, 8 Va. App. 400, 405, 382 S.E.2d 279, 281 (1989). Such factors include "the purpose and flagrancy of any police misconduct," "the length of the interview," and any "moral and

psychological pressures to confess emanating from official sources."  Morris, 17 Va. App. at 579, 439 S.E.2d at 870.  As with the assessment of the voluntariness of a waiver of Miranda rights, "coercive police activity is a necessary predicate to finding that a confession is not 'voluntary' . . . ."  Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 522, 93 L. Ed. 2d 473 (1986).

Although

> it is desirable to have a parent, counsel or some other interested adult or guardian present when . . . a juvenile waives fundamental constitutional rights and confesses to a serious crime . . . , the mere absence of a parent or counsel does not render a waiver invalid. . . .  [T]he presence or absence of a parent, guardian, independent interested adult, or counsel is . . . [but one] factor to be considered in the totality of the circumstances . . . .

Grogg v. Commonwealth, 6 Va. App. 598, 613, 371 S.E.2d 549, 557 (1988); see also Potts, 35 Va. App. at 496, 546 S.E.2d at 235 (voluntariness of confession); Novak, 20 Va. App. at 387-88, 457 S.E.2d at 409 (voluntariness of confession).  Although "[t]he absence of a parent or counsel is 'a circumstance that weigh[s] against the admissibility of the confession,'" Grogg, 6 Va. App. at 613, 371 S.E.2d at 557 (quoting Miller v. Maryland, 557 F.2d 1158, 1159 (4th Cir. 1978)), we have held that the absence of a parent or other interested adult "weighs less heavily against the admissibility of the confession" where the juvenile is given the opportunity to contact such a person but "decline[s] to do

so," id. at 614, 371 S.E.2d at 557; see Roberts, 18 Va. App. at

558, 445 S.E.2d at 711; Smith v. Commonwealth, 7 Va. App. 310,

315, 373 S.E.2d 340, 343 (1988).

Here, appellant's age dictates special caution,[3] and no

evidence established he had any prior experience with the

criminal justice system.  Nevertheless, we hold the totality of

the circumstances, including the trial court's specific findings

about appellant's courtroom demeanor and level of

sophistication, supported its conclusion that appellant's waiver

of his Miranda rights was knowing, intelligent and voluntary and

that his subsequent confession was voluntary, as well.

Detective Steve Shillingford asked appellant on two

separate occasions whether he wished to have a parent present

during questioning.  Appellant told Detective Shillingford that

he believed both his parents were at home, but appellant

declined both of Shillingford's offers to secure the presence of

a parent.  The second of those offers came after appellant

learned the victim had died, but appellant again declined the

offer.  We must presume, based on the trial court's findings of

fact, that appellant "under[stood] what he [was] involved in"

---

[3] The American Bar Association's Task Force on Youth in the
Criminal Justice System urges particular caution when evaluating
a waiver of substantive rights by "any youth fourteen years of
age or younger."  ABA Criminal Justice Section Task Force on
Youth in the Criminal Justice System, Youth in the Criminal
Justice System: Guidelines for Policymakers & Practitioners 15
(2001).

when he did so.  Appellant was not under the influence of drugs or alcohol at the time of the questioning.  He was fluent in English and had completed the eighth grade.  The trial court noted that, despite appellant's age, it "[could] take the measure of [appellant] by the way he . . . presented himself . . . in court [at the suppression hearing]" and that appellant's presentation "[gave] the Court some idea of [appellant's] level of sophistication, his ability to understand what he [was] involved in."

The evidence also established that the police read appellant his Miranda rights on two different occasions before he waived them.  Appellant first received his Miranda rights from an unknown officer when he was put in a police car following his apprehension.  The second reading occurred in a twelve-foot square interview room where only appellant and two detectives were present.  Appellant was not in handcuffs or any other restraints at that time.  Although that reading occurred at 5:20 a.m., the stabbing itself had occurred at 3:00 a.m., and the evidence, viewed in the light most favorable to the Commonwealth, supported a finding that appellant was not too tired to understand his rights and the consequences of waiving them.

Detective Shillingford read each right to appellant, and appellant indicated, either verbally or by nodding his head, that he understood each right.  He also agreed with the

statement that no promises or threats had been made to him by anyone. He then agreed to speak to Detective Shillingford about the stabbing. Although appellant initially expressed some hesitation about signing the waiver of rights form, he signed the form willingly after Detective Shillingford explained his signature indicated only that he understood his rights. In audiotaped questioning which occurred immediately after appellant confessed, appellant confirmed that he understood his rights.

Finally, when appellant testified at the suppression hearing, he ultimately admitted that Detective Shillingford had informed him of his Miranda rights prior to questioning and that he understood them. Although appellant had inquired prior to being informed of his rights the second time whether he should have a lawyer, he testified at the suppression hearing that having his rights read to him answered that question and that he understood his rights. The trial court concluded appellant's question about whether he needed a lawyer "indicate[d] that [appellant] under[stood] why he [was] there and perhaps under[stood] the nature of what he [was] about to engage in. It [was] not indicative of a person who was so sleepy that [he was] not aware of what [was] going on around [him]." It noted that, although appellant "was perhaps yawning at the station, . . . he was not indicating anything that would make it apparent that he wanted to sleep as opposed to undertake the business at hand."

Thus, despite appellant's age and the absence of a parent, counsel, or other interested adult, the totality of the circumstances supports the trial court's finding that appellant's waiver of his Miranda rights was knowing and intelligent under the specific facts of this case.

Citing his right to due process, appellant contends the police had a duty to explain to him "the true nature of his situation[,] . . . that he would be charged with first degree murder, that he would automatically be certified and tried as an adult, and that he faced the potential of life in adult prison if he was found guilty of that charge." We disagree. We noted in Roberts, 18 Va. App. at 558, 445 S.E.2d at 711, that where the accused, a juvenile, "was informed that he stood charged with murder and attempted murder, . . . his waiver [of rights] was not invalid simply because he had not been informed of the range of punishment for these offenses."

Under the transfer statute in effect when the events at issue in Roberts occurred, the juvenile court had the discretion to retain jurisdiction over a juvenile alleged to have committed a felony or to transfer the juvenile to circuit court for trial as an adult. See 1993 Va. Acts chs. 6, 908; 1990 Va. Acts ch. 651 (former Code § 16.1-269). However, we see no reason to hold that a juvenile must be informed of the punishment he might face on a murder charge simply because the legislature has concluded an individual charged with such an offense is not

amenable to treatment as a juvenile rather than leaving the

decision regarding amenability to the juvenile court.

Although we find instructive the Supreme Court's holding in

Gallegos v. Colorado, 370 U.S. 49, 82 S. Ct. 1209, 8 L. Ed. 2d

325 (1962), cited by appellant, we conclude that holding does

not require a different result.  In Gallegos, the Court said

that

> a 14-year-old boy, no matter how
> sophisticated, is unlikely to have any
> conception of what will confront him when he
> is made accessible only to the police.
> [Such a person] is not equal to the police
> in knowledge and understanding of the
> consequences of the questions and answers
> being recorded and . . . is unable to know
> how to protect his own interests or how to
> get the benefit of his constitutional
> rights.

370 U.S. at 54, 82 S. Ct. at 1212; see also Haley v. Ohio, 332

U.S. 596, 601, 68 C. Ct. 302, 304, 92 L. Ed. 224 (1948) (holding

interrogation of fifteen year old without parent or attorney

violated due process).

Gallegos is distinguishable from appellant's case.

Although Gallegos confessed "immediately" after being taken into

custody, the Supreme Court noted that the "crucial evidence

introduced at the trial [was] a formal confession which he

signed . . . after he had been held for five days during which

time he saw no lawyer, parent, or other friendly adult."  370

U.S. at 50, 82 S. Ct. at 1210; see also Haley, 332 U.S. at

599-600 (noting that "police, working in relays, questioned

[juvenile] hour after hour, from midnight until dawn").  Thus, we do not view Gallegos as holding that a confession made by a juvenile fourteen years old or younger is per se involuntary if made in the absence of a parent, counsel or other interested adult.  Rather, we view it as holding that a court should use special care in scrutinizing the voluntariness of a confession made by a suspect of that age.

Although we are unaware of any Virginia appellate decisions upholding the rights waiver of a fourteen-year-old suspect, our case law makes clear that the age of a juvenile suspect, although an important factor, is not dispositive and that we must consider it as part of the totality of the circumstances. Grogg, for example, involved a suspect who was "a week shy of his sixteenth birthday," but he had completed only the seventh grade, and intelligence testing showed his "verbal comprehension ability fell within the low average range."  6 Va. App. at 614, 371 S.E.2d at 557-58.  Under the facts of that case, we held the evidence supported the trial court's finding that Grogg's waiver was knowing and intelligent.  Id. at 617, 371 S.E.2d at 559. Grogg was in good physical health, was not under the influence of any drugs or alcohol, and had one prior appearance in juvenile court.  Id. at 614, 371 S.E.2d at 557-58.  He had been advised of his Miranda rights twice before making his first statement and an additional two times before making the statement at issue in that appeal.  Id. at 614-15, 371 S.E.2d at

558.  The evidence established that the investigating officer read each <u>Miranda</u> right to Grogg individually, confirmed that he understood each right and the nature of the offense about which he was being questioned, and obtained Grogg's consent to speak with them without an attorney present.  <u>Id.</u> at 615, 371 S.E.2d at 558.

Here, although appellant was approximately one-and-one-half years younger than Grogg, Grogg had limited verbal comprehension skills and had completed only the seventh grade.  Appellant, by contrast, had completed the eighth grade, and no evidence established below-average intelligence or comprehension.  The trial court, which observed appellant testify at the suppression hearing, was entitled, as it did, to draw inferences about appellant's "level of . . . sophistication" and ability to "understand[] why he [was] there" and "what he [was] involved in."

Appellant challenges the voluntariness of both the waiver of rights and the confession itself, alleging the assertion by police of "authority [over] a suspect who is 'especially susceptible'" may amount to "coercive police activity."  He makes no "specific allegations of misconduct on the part of the police."

As the Fourth Circuit Court of Appeals recently emphasized, "a deficient mental condition (whether the result of a pre-existing mental illness or, for example, pain killing

narcotics administered after emergency treatment) is not, without more, enough to render a waiver [or confession] involuntary. . . . The evidence [must] show that law enforcement officials exploited [the accused's] weakened condition with coercive tactics," Cristobal, 293 F.3d at 141, although the degree of coercion required is lower where the suspect's level of susceptibility is higher, see Peterson, 15 Va. App. at 488, 424 S.E.2d at 723. Under this standard, we hold the evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's conclusion that appellant's waiver of rights and confession were voluntary.

The trial court found that the evidence of appellant's susceptibility to coercion was minimal. Although appellant was only fourteen years old, he admitted receiving and understanding his Miranda rights and expressly declined two offers to have a parent present. The record established that he had an eighth grade education and was fluent in English, and the trial court, after observing appellant testify at the suppression hearing, drew certain inferences regarding appellant's "level of sophistication" and "ability to understand what he [was] involved in." Although appellant claimed to have been "really tired" and inattentive, the trial court resolved this factual issue largely in the Commonwealth's favor, finding that although appellant may have "yawned" some "at the station," his behavior showed an awareness of what was going on around him, and he gave

no indication to the detectives "that he wanted to sleep as opposed to undertake the business at hand."

Further, the conduct of the police and the circumstances surrounding the interview were insufficient to compel a finding of coercion, explicit or implicit. As discussed in detail, supra, Detective Shillingford explained the nature of the offense about which he hoped to question appellant, gave appellant two opportunities to have a parent present during questioning, read appellant his Miranda rights, and ascertained that appellant understood those rights and was willing to speak with the officers. Detective Shillingford advised appellant of his Miranda rights at 5:20 a.m. and completed the initial interview, in which appellant admitted stabbing the victim, about an hour later. The subsequent audiotaped interview, in which appellant repeated that confession, lasted approximately twenty minutes. The entire encounter from the reading of appellant's rights to completion of the taped interview, lasted only one-and-one-half hours. Appellant concedes that the police engaged in no specific misconduct. Any pressure to confess exerted by the detectives consisted only of Detective Shillingford's statement that the victim's family and appellant's friends identified appellant as the perpetrator and Detective Shillingford's exhortation to appellant "to be honest."

Thus, under the totality of the circumstances, giving deference to the trial court's findings of fact, we hold the evidence, although troubling based on appellant's age, supports the conclusion that appellant's waiver of rights was knowing and intelligent and that the waiver and confession were voluntary.

III.

For these reasons, we hold that certification of the murder charge to a grand jury without a transfer hearing, as provided for in Code § 16.1-269.1, did not violate appellant's constitutional rights and that the evidence, viewed in the light most favorable to the Commonwealth, meets the minimum standards required to support the trial court's conclusion that appellant's waiver of rights was knowing and intelligent and that his waiver and confession were voluntary.  Thus, we affirm the conviction.

Affirmed.