COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Felton, Judges Elder and Petty
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1451-09-1                 CHIEF JUDGE WALTER S. FELTON, JR.
                                                         NOVEMBER 3, 2009
KYHEIM DELANGO TUCKER


                 FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                              Christopher W. Hutton, Judge

              Rosemary V. Bourne, Assistant Attorney General (William C. Mims,
              Attorney General, on brief), for appellant.

              Ronald L. Smith (Smith Law Firm, on brief), for appellee.


        Pursuant to Code § 19.2-398, the Commonwealth appeals the pre-trial judgment of the

trial court suppressing statements Kyheim Delango Tucker ("Tucker") made to police officers.

On appeal, the Commonwealth contends the trial court erred in finding that Tucker did not

knowingly and intelligently waive his previously invoked right to counsel.  For the reasons that

follow, we affirm the trial court's ruling suppressing the statements made by Tucker.

                                       BACKGROUND

        On appeal of an order granting a motion to suppress, we view the evidence in the light

most favorable to the accused, the prevailing party below, granting to the evidence all reasonable

inferences fairly deducible therefrom.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067,

407 S.E.2d 47, 48 (1991).  We review the trial court's findings of historical fact only for clear

error.  Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996).  However,

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

we review *de novo* the trial court's application of defined legal standards to the particular facts of a case. Ornelas v. United States, 517 U.S. 690, 697 (1996).

So viewed, the evidence established that Tucker was taken into custody on December 31, 2008, on a weapons charge.[1] Tucker was placed in a six feet by six feet windowless interview room at 11:55 a.m. He was permitted to have bathroom breaks and given cigarettes and water. At 4:46 p.m., after interviewing a suspected co-defendant and a witness related to a murder and robbery, Detectives Mike Wisniewski and Kendall Brown began a videotaped interview of Tucker.[2]

Tucker was advised of his Miranda[3] rights and signed a Miranda rights acknowledgement form. At 4:52 p.m., Tucker asked if the detectives "could call [his] lawyer for him." When Detective Wisniewski asked Tucker, "what are you saying? You want your lawyer," the video of the interrogation shows Tucker affirmatively nodding his head. The detectives then left the interview room at 4:53 p.m.

At 4:59 p.m., the detectives returned to inform Tucker he was being charged with murder. They asked Tucker if there were any family members that should be contacted because he was "going to be [there] for a little while." Tucker asked for his grandmother and father to be contacted, and the detectives started to leave the room. At 5:01 p.m., after an inaudible exchange between the detectives and Tucker, Detective Wisniewski asked Tucker, "ok, so you're saying you want to talk with us without your lawyer present?" Tucker responded, "yeah man, I don't

---

[1] At the suppression hearing, Detective Wisniewski testified that Tucker, a convicted felon, was taken into custody based on a reliable informant's statement that he had seen Tucker with a pistol several days earlier.

[2] The video recording of Tucker's interrogation was admitted during the suppression hearing and made part of the record.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

understand none of this shit." During the ensuing interrogation, Tucker denied any involvement in the murder and robbery.

At 5:53 p.m., Tucker told Detective Brown, "no disrespect to your profession but I rather have my lawyer right here." The video shows Detective Brown sitting right in front of Tucker staring at him without speaking. Detective Brown then informed Tucker, "I need you to be perfectly clear." At 5:54 p.m., Tucker slowly and clearly repeated, "I want to see my grandmother and my lawyer." Detective Brown left the interview room, leaving Tucker alone in the room.

At 6:00 p.m., the detectives opened the door to the interview room, but turned and left without speaking to Tucker. Tucker then knocked on the door and, at 6:02 p.m., asked how long he would have to stay in the room alone. The detectives informed him that they could not speak to him because he had requested his attorney and shut the door. At 6:19 p.m., after pacing around the interview room for over 15 minutes, Tucker knocked on the door and asked where the detectives were. When the detectives returned to the interview room at 6:21 p.m., Tucker was balled up in the corner of the room with his shirt over his head sobbing, and said, "[it] wasn't my fault man, [it] wasn't my fault man." Tucker then said, "he had a gun too, he had a gun too." Without further inquiry from the detectives regarding Tucker's previously invoked right to counsel, the detectives began to question Tucker, who subsequently made incriminating statements. That interrogation lasted from 6:21 p.m. until 8:43 p.m., when Tucker again requested counsel. At 11:24 p.m., Tucker was handcuffed and removed from the interview room. Tucker was charged with second-degree murder, robbery, use of a firearm (two counts), and possession of a firearm after having been convicted of a felony.

ANALYSIS

The Commonwealth conceded on brief that Tucker twice "clearly, unambiguously and unequivocally asserted his right to counsel during a custodial interrogation." Ferguson v. Commonwealth, 278 Va. 118, 124, 677 S.E.2d 45, __ (2009). The Commonwealth asserts that, even though Tucker twice clearly invoked his right to counsel, he knowingly and intelligently waived his right to counsel, when he said, "[it] wasn't my fault man, [it] wasn't my fault man" and "he had a gun too, he had a gun too." The Commonwealth argues those statements demonstrated Tucker's intent to open up a "generalized discussion" relating to the investigation. Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983). We disagree.

"Absent a knowing and intelligent waiver of the Fifth Amendment right against self-incrimination and the Sixth Amendment right to the assistance of legal counsel, a confession made by a suspect during in-custody interrogation is inadmissible in evidence against him." Harrison v. Commonwealth, 244 Va. 576, 580, 423 S.E.2d 160, 162 (1992). "[A]n accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

> Thus, the prophylactic protections that the Miranda warnings provide to counteract the "inherently compelling pressures" of custodial interrogation and to "permit a full opportunity to exercise the privilege against self[-]incrimination," are implemented by the application of the Edwards corollary that if a suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the "inherently compelling pressures" and not the purely voluntary choice of the suspect.

Arizona v. Roberson, 486 U.S. 675, 681 (1988) (quoting Miranda, 384 U.S. at 467).

Once the accused requests counsel, police should "scrupulously" honor the request. Michigan v. Mosley, 423 U.S. 96, 104 (1975). "[A] defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the Miranda warnings. At that point, not only must the immediate contact end, but 'badgering' by later requests is prohibited." Montejo v. Louisiana, 129 S. Ct. 2079, 2090 (2009). "Only if the accused initiates further 'communication, exchanges, or conversations with the police,' and only if those communications result in the accused changing his or her mind and freely and voluntarily waiving the right to counsel, may the police resume interrogation without violating the Edwards rule." Ferguson v. Commonwealth, 52 Va. App. 324, 335, 663 S.E.2d 505, 510 (2008) (quoting Roberson, 486 U.S. at 682), aff'd, 278 Va. 118, 677 S.E.2d 45 (2009); see also Zektaw v. Commonwealth, 278 Va. 127, 139, 677 S.E.2d 49, __ (2009) (holding "I'd really like to talk to a lawyer" was a clear invocation of right to counsel that was not thereafter made ambiguous by defendant's additional statement "Oh my God, oh, my Jesus, why?").

"[T]he inquiry whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness." Harrison, 244 Va. at 581, 423 S.E.2d at 163.

> [The trial court] evaluates the credibility of the witnesses, resolves any conflicts in the testimony, and weighs the evidence as a whole. The court must decide whether the defendant knowingly and intelligently relinquished and abandoned his rights. The court's determination is a question of fact based upon the totality of the circumstances. This factual finding will not be disturbed on appeal unless plainly wrong.

Id. (quoting Watkins v. Commonwealth, 229 Va. 469, 477, 331 S.E.2d 422, 429-30 (1985)). "[I]n at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler, 441 U.S. 369, 373 (1979); see also Harrison, 244 Va. at 584, 423 S.E.2d at 165. The inference must be made on "'the particular facts and circumstances

surrounding that case, including the background, experience, and conduct of the accused.'"

Butler, 441 U.S. at 374-75 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).  A waiver is knowing and intelligent when made "'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'"  Rodriguez v. Commonwealth, 40 Va. App. 144, 156-57, 578 S.E.2d 78, 83 (2003) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

We find the trial court's factual determination that Tucker did not knowingly, intelligently, and voluntarily waive his previously invoked right to counsel is amply supported by the record on appeal.  Tucker was left alone in an interview room for almost five hours prior to his first request for counsel.  Six minutes after Tucker requested counsel, Detectives Wisniewski and Brown informed Tucker he would be charged with murder.  After talking with the detectives about the situation, Tucker invoked his right to counsel a second time at 5:53 p.m.  Once Tucker requested counsel, the detectives should have "scrupulously honored" that request.  Mosley, 423 U.S. at 104.

At 6:02 p.m., Tucker asked the detectives how long he would have to stay in the interview room by himself and was informed that they could not speak to him because he had requested counsel.[4]  Tucker asked for water and food and asked where the detectives were for a second time.  At 6:21 p.m., after Tucker had been in the interview room for almost six and a half hours, he was in tears and said, "[it] wasn't my fault man, [it] wasn't my fault man," when the detectives returned.  Without further inquiry as to whether he desired to have counsel present, the detectives immediately began to question him regarding his involvement in the shooting.

> [T]his encounter was one continuous custodial interrogation
> conducted in such a manner as to deliberately disregard a clear,
> unambiguous and unequivocal invocation of the right to counsel

---

[4] Interestingly, the detectives earlier spoke with Tucker at 4:59 p.m., despite his request for counsel a mere seven minutes earlier.

- 6 -

and coerce [the accused] to incriminate himself. The person subject to interrogation does not have to repeat his invocation of the right to counsel - once is enough if it is clear, unambiguous and unequivocal as it is in this case.

Ferguson, 278 Va. at 126, 677 S.E.2d at __. Furthermore, Tucker's statements, much like those made by the accused in Zektaw, did not evince a knowing, intelligent, and voluntary waiver of his right to counsel. The trial court's factual determination that Tucker did not knowingly and intelligently waive his right to counsel was not plainly wrong, as the Commonwealth failed to show that Tucker was fully aware "'of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" Rodriguez, 40 Va. App. at 156, 578 S.E.2d at 83 (quoting Moran, 475 U.S. at 421).

For these reasons, we affirm the trial court's granting of Tucker's motion to suppress and remand for further proceedings consistent with this opinion should the Commonwealth be so advised.

Affirmed and remanded.